Appellant-defendant was indicted for first degree murder, convicted therefor, and sentenced to life imprisonment. He was an indigent at the nisi prius trial and here, with same appointed counsel at both judicial levels.
The incident that occasioned the homicide was a robbery of a storekeeper, Joe Singleton, who operated a small business. The robbers and accomplices were not satisfied to take his money under circumstances that constituted robbery, but one of them shot and beat him. Death ensued from the wounds inflicted on his body.
The robbers fled the scene, and following a thorough investigation, some were apprehended. Appellant was one of the suspects. The evidence in most areas was circumstantial.
It appears that conversations between defendant and other suspects were presented as evidence. These conversations were incriminating and involved defendant and the others in a division of the stolen money. It would serve no useful purpose to delineate the conversations. Suffice it is that the part that appellant took in the conversation pointed to him as knowing about the robbery and the plans therefor which he encouraged. It is not shown by these conversations that he was actually present during the robbery. In fact, there were no eyewitnesses who were able to identify the robbers, or, at least, the record before us fails to disclose such identities.
The record shows that appellant was arrested on July 20, 1975, for assault with intent to rob the deceased victim, Joe Singleton, and jailed therefor. He was indicted for killing the said Joseph Singleton under such circumstances as to constitute murder in the first degree. The indictment was returned on July 26, 1976. For aught appearing, the defendant continued to be a prisoner in jail. *Page 436 
While a prisoner, one A.G. Tew, an investigator for the Alabama Bureau of Investigation, talked with him on July 24, 1976, and, according to his evidence, advised him of his Miranda rights to have a lawyer, and he signed the standard waiver of counsel, which was introduced in evidence without objection. This waiver appears as Exhibit No. 6 to his evidence. It does not appear what questions, if any, the witness asked the defendant. The conversation took place in the sheriff's office.
The next witness recalled was H.O. "Red" Williams, the sheriff of Bullock County. The witness testified, outside the presence of the jury, that he sent for the defendant, and had him brought to the court house (to his office), where, after sitting there a few minutes, he asked him about Mr. Snipes, who was a fugitive and wanted as an actual perpetrator or an accomplice in the murder of Mr. Joe Singleton, with which defendant was also charged. Defendant talked about Snipes, and did not say he wanted a lawyer. Then the sheriff asked him about a marijuana patch defendant was supposed to have; that defendant told him he had only two stalks for each of which he could get $150.00.
The witness further testified that defendant voluntarily brought up the murder case against him and "asked me about his case _ _ _ about his chances":
 "WITNESS: He just asked me what his chances were and he also told me he never did get out of the car, that he sat in the car and was reading his mail; that he read his mail the whole time the incident went on; that he never left the automobile.
 "MR. DOZIER: Okay. You knew at the time Mr. Freeman was in custody?
"WITNESS: Yes, sir.
 "MR. DOZIER: Before you discussed this case with him did you advise him of his constitutional rights.
"WITNESS: He had been advised of his rights.
"MR. DOZIER: I mean that day.
"WITNESS: No."
The trial court observed:
 "THE COURT: Well, he had been given his rights by Corporal Tew. I'm going to let him testify and you will have an exception. You might have a good point but I don't think you do."
It also appears in the record that this interview in the sheriff's office took place on Sunday night, August 15, 1976, before the trial started on August 19, 1976. Hence, it appears that twenty-six days (three weeks and five days) had elapsed between the date on which Corporal Tew advised defendant of hisMiranda rights and the date the sheriff got the defendant out of jail and talked with him. The warning had lost its prior efficacy.
This Court observed in Allen v. State, 53 Ala. App. 66,297 So.2d 391 (4), cert. denied, 292 Ala. 707, 297 So.2d 399, as follows:
 "As held in Jones v. State, 47 Ala. App. 568, 258 So.2d 910, relied upon in McBee v. State, 50 Ala. App. 622, 282 So.2d 62, Miranda warnings are not required to be given before each separate interrogation of a defendant after a valid waiver of his right has been made. Even so, the reasons that require Miranda
warnings before an in-custody interrogation logically apply to an interrogation that takes place such a long period of time after warnings and waiver that under the circumstances it is to be reasonably concluded that defendant was not impressed thereby in making a confession. Intervening circumstances in various cases are necessarily variant, but three weeks confinement in jail under the circumstances shown in this case would seem to deprive the warnings and waiver of their previous efficacy."
It further appears in the record that the sheriff knew at the time of defendant's alleged inculpatory statement, supra, that defendant was represented by counsel and he knew this before he started talking to him. He didn't attempt to call his lawyer.
We follow our pronouncement in Allen, supra, aforequoted, and hold that in this *Page 437 
instant case the Miranda warning, mandated by Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, given by Officer Tew, had lost its efficacy, and new warning was required.
But assertion is made that the inculpatory statement of defendant, supra, was voluntary and that Miranda had no application in its requirement that a defendant be advised of his rights to an attorney.
The totality of the circumstances leading up to the interview must be considered. It is to be noted that defendant, an indigent and partially illiterate, was in jail in the custody of the sheriff. The defendant did not invite the interview; the sheriff sent his deputy to the jail and brought defendant to the court house. The sheriff proceeded to question him about Snipes, one alleged accomplice in the homicide, and with whom defendant was acquainted. The sheriff then questioned defendant about his possession of some stalks of marihuana. Such possession itself was a criminal offense. So, we have the sheriff opening up the subject of crime and the homicide, thereby paving the way for defendant to admit his inculpatory presence at the scene of the crime. The time and the place was an appropriate setting for the admission. Indeed, it was an appropriate time because defendant's appointed counsel was not there, and the sheriff made no effort to have counsel present, even though he had plenty of time to do so. He willingly by-passed the presence of defendant's counsel. The sheriff picked the time and place and the subjects for discussion to be held at a time when defendant's counsel was not there. Evidently, the sheriff did not want the attorney there. We think defendant was denied his constitutional rights of counsel and that such denial is not cured by a contention that the inculpatory statement was voluntary. The setup was a subterfuge to evade due process and defendant's Miranda rights. We do not think the statement was voluntarily made as that rule is intended to apply.
Although the homicide of which appellant is accused of being an accomplice was unnecessary and without lawful provocation, it nevertheless remains that appellant was entitled to be tried according to the rules of law.
Justice Kohn, speaking for the Supreme Court of Alabama, appropriately observed in Watts v. State, 282 Ala. 245,210 So.2d 805 (3), as follows:
 "The worst wretch that walks the earth is entitled to a fair trial, for the law is superior to all persons. As much as we may regret some results of the law, the law must be preserved if this constitutional democracy is to survive."
The trial court erred in overruling defendant's objection to the evidence relating to the alleged inculpatory statement. The judgment of conviction is reversed and the cause is remanded for appropriate disposition.
The foregoing opinion was prepared by the Honorable Bowen W. Simmons, retired Circuit Judge, serving as a Judge of this Court, under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, P.J., and HARRIS and BOWEN, JJ., concur.
BOOKOUT and DeCARLO, JJ., concur in result.