The petition for certiorari was granted in this case in order to determine whether the Court of Criminal Appeals was correct in upholding Michael Miller's conviction for sexual abuse in the first degree. 460 So.2d 227 (Ala.Cr.App. 1983).
Defendant, Michael Miller, was indicted for violation of §13A-6-66, Code of Alabama (1975), sexual abuse in the first degree. He was convicted in the Circuit Court of Madison County and sentenced to seven years' imprisonment in the state penitentiary.
At trial, the state called Patricia Lynn Reynolds, the victim of the alleged assault, as its first witness. Miss Reynolds testified as to the following.
On the morning of May 7, 1982, Miss Reynolds went to her sister's house to babysit. Later that morning, the defendant arrived at the house, stating that he was to meet his sister there. She arrived, and the two left shortly thereafter. Approximately fifteen to twenty minutes later, the defendant returned, stating that he was to meet his sister there again.
Miss Reynolds then testified that the defendant sat next to her on the sofa and tried to kiss her. He then told her that she was pretty, and that he wanted her. She asked the defendant to leave, and when he refused, she attempted to telephone her father. The defendant then ripped the phone off the wall, grabbed Miss Reynolds by the neck, pushed her against a counter, and began to feel her breasts through her clothing. Miss Reynolds tried to push the defendant from her, but he grabbed her by the hair and threw her to the floor, where he felt her breasts and between her legs on the outside of her clothing. She again tried to push the defendant away, and he told her that he would get a knife and cut her clothes off if he had to. Interrupted by one of the children in the house, he got up and told Miss Reynolds that he would kill her if she called the law, and she could count on his coming back to get some. Then the defendant left the house.
At trial, the state attempted to elicit testimony concerning a prior conviction of the defendant. The statements concerning this conviction came while the defendant's mother, Mrs. Betty Golden, was on the stand. On direct examination, Mrs. Golden testified that, in her opinion, her son had had mental problems in the past. The prosecutor's first question on cross-examination was:
 Mrs. Golden, had you heard back on August 28, 1978 that your son over here (INDICATING), Michael Miller, was convicted of grand larceny, buying, receiving and concealing stolen property; were you aware of that?
Defense counsel immediately made an objection and then a motion for a mistrial, both of which were overruled.
The issues presented for our review are:
 1. Whether the trial court erred in allowing the state to question a defense witness concerning the accused's prior conviction before the defendant took the stand.
 2. Whether the evidence at trial was sufficient to support a verdict of guilty.
After reviewing the evidence, we find that it was reversible error to allow the state to comment on the defendant's prior conviction before he testified, and we, therefore, reverse the decision of the Court of Criminal Appeals and remand the case for a new trial. Because of our resolution of the first issue, discussion of the second issue is pretermitted.
Defendant contends that the trial court erred in allowing the state to bring up, before the jury, the defendant's prior conviction before he took the stand. The conviction was brought out in the state's cross-examination of the defendant's mother. The court overruled defense counsel's objection to the state's question, along with his motion for a mistrial, because the defendant had pleaded not guilty by reason of insanity, and the defendant's mother testified that she believed he had a mental problem.
 "Where insanity is relied upon as a defense every act of the accused's life *Page 230 
which throws some light on such issue is relevant thereto."
Nichols v. State, 276 Ala. 209, 211, 160 So.2d 619, 621 (1964). The court, in Nichols, went on to say that any such acts or conduct must have a tendency to shed light on the accused's mental capacity when the act for which he is being tried was committed. Id.
A period of approximately four years passed between the defendant's alleged prior conviction and the incident which is the basis of this action. The alleged prior conviction was, according to the prosecutor, for grand larceny, or for buying, receiving and concealing stolen property. In Coffey v. State,244 Ala. 514, 14 So.2d 122 (1943), this court stated:
 This appellant was on trial for his life and we are of the opinion that the court below committed reversible error in permitting the state to introduce in evidence the fact that the defendant, at a time far removed from the date of the homicide, assaulted another person, which act could have no possible tendency to prove the sanity of the defendant at the time of the homicide, and which act was in no way admissible under the plea of "not guilty."
244 Ala. at 521, 14 So.2d at 127. In Coffey, the period of time was longer (9 years); however, in Pilkington v. State, 46 Ala. App. 716, 248 So.2d 755 (Ala.Crim.App. 1971), the period of time between the alleged homicide and the prior assault was only two months. The Pilkington case is very similar to the case at bar. In both cases, defense counsel offered proof that insanity was a possibility early in life. The Pilkington court reversed the lower court's conviction because the evidence of the prior crime was too prejudicial to allow its admission. The Court of Criminal Appeals quoted from an article by Judge McElroy for support:
 ". . . Though it is impossible to avoid the conclusion that, in a broad sense, every act of a person's life is relevant to the issue of his mental capacity at any time of his life, it is also possible that evidence of the act of a party at a particular time may have but a glimmer of probative value on the issue of his mental capacity at another time, and yet be likely to stimulate excessive emotion or prejudice against him and thus to dominate the mind of the trier of fact and prevent a rational determination of the truth. In a situation of that sort, it would seem that evidence of the act ought to be excluded. . . ."
McElroy, Relevancy of Evidence in Alabama Upon an Issue of aPerson's Mental Capacity, 4 Ala. Law. 384, 394 (1943).
In the present case, as in Pilkington, the state failed to offer any evidence that the defendant's state of mind was the same at the time of the prior conviction as it was at the time of the commission of the act in question. Without such evidence, the prior conviction is not admissible. The trial court, therefore, should not have allowed the question asked by the State, or, in the alternative, should have granted defense counsel's motion for a mistrial.
For the above-stated reasons, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded to that court with instructions to remand the case to the circuit court for a new trial.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur. *Page 231