21 So.2d 844

### PATTON v. STATE.

2 Div. 208.

Supreme Court of Alabama.

April 26, 1945.

T. G. Gayle, of Selma, and J. Fred Wood, of Centerville, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

**SIMPSON, Justice.**

Defendant was convicted of murder in the first degree and from a sentence of death brings this appeal.

His principal insistence of error is the refusal of the trial court to grant his application for a change of venue. The burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot reasonably be expected, in order to achieve the right to a change of venue. Godau v. State, 179 Ala. 27, 60 So. 908. The mere belief of the defendant or of his witnesses that he cannot receive such a trial is not enough. Lee v. State, ante, p. 343, 20 So.2d 471.

The defendant rested his right to a change of venue upon the following facts, as distinguished from mere conclusions: (1) Extraordinary public interest in the case and supposed public indignation against defendant, as evidenced by a posse of citizens who joined in the search for the defendant; (2) his incarceration in an out-of-county jail; (3) publication in The Greensboro Watchman, a local newspaper, of an article in which it is claimed erroneous statements of fact were embraced, having a tendency to inflame the public mind; (4) the presence of several State Highway Patrolmen in and around the courthouse at the trial to aid the local constabulary in maintaining order and in searching persons for weapons who entered the courtroom; (5) presence on the 75-juror venire of nineteen jurors who were residents in and around Moundville, the neighborhood of the crime; and (6) appointment of two out-of-county attorneys who, it is alleged, were not as well acquainted with the personnel of the venire as local counsel might have been.

Upon a careful consideration of the question, we are not reasonably satisfied that defendant could not obtain a fair and impartial trial before fair and impartial jurors in Hale County. Other cases, where the proven facts more strongly supported the application for change of venue than do the facts here, have exhaustively treated the proposition and clearly demonstrate the correctness of the trial court's refusal to grant the application in the instant case. See Godau v. State, 179 Ala. 27, 60 So. 908; McClain v. State, 182 Ala. 67, 62 So. 241; Powell v. State, 224 Ala. 540, 141 So. 201.

It is fair to assert that the first three numbered circumstances above alleged are conditions which usually attend or follow the commission of all very brutal crimes, whatever the community, and it must be conceded that the crime for which this defendant was convicted was of that character. In such cases public interest and sometimes public indignation may be intense, but where there are no outward demonstrations indicative or productive thereof upon which to base a just conclusion that a fair and impartial trial would be improbable, no sufficient showing is made to justify the granting of a change of venue. "A change of venue is granted only when it is clearly shown that a fair and impartial trial may not be had in the county in which the indictment is found. * * * Facts and circumstances rendering such a trial improbable must appear. The mere belief of the party applying, or of the witnesses he is enabled to produce, that such trial cannot be had, will not suffice." Jackson v. State, 104 Ala. 1, 4, 16 So. 523, 524.

The conduct of the posse of citizens who aided in his apprehension is clearly adversary to the defendant's contention that this indicated great public indignation against him, entitling him to the granting of his application, for after he

was apprehended no one molested or threatened him, but all maintained complete order until an officer of the law arrived. The officer then took him to jail in an adjoining county, which should have been and usually is done in such a case as an added precaution for the prisoner's safekeeping.

■ As to the effect of the presence of the State Patrolmen, our observations in the Powell case, above cited, is sufficient answer. The presence of the officers, "instead of having a coercive influence on the jury, was notice to everybody that the strong arm of the state was there to assure the accused a lawful trial. Any good citizen would ·interpret this to mean a fair trial in which the guilt or innocence of defendants should be determined on the evidence and punishment meted out accordingly." Powell v. State, 224 Ala. 540, 553, 141 So. 201, 213.

■ Nor could it be said that the newspaper article was calculated to so mold public opinion as to render a change of venue proper. Powell case, supra. No such sensational or denunciatory statements were made in it as would indicate to the impartial mind that it would so affect the citizenry as that a fair and impartial trial could not be had. Pertinent comment relative to this question is found in the Godau case, where it was said: "So long as we have newspapers we may expect to have through them the report of crimes, and it is not to be unexpected that, when a homicide is committed * * * the newspapers of the community, answering the public interest, will furnish the defendant with at least some material upon which to base an application similar to the one under discussion." Godau v. State, 179 Ala. 27, 36, 60 So. 908, 910.

And again in the McClain case it was stated: "We are not prepared to concede * * * that the sensational language of a newspaper reporter or special correspondent used in 'writing up' such cases * * * may be safely taken as a reflection of general public sentiment; nor that it may be lightly assumed that such statements as those * * * shown are capable of permanently molding and fixing the opinions of the more intelligent classes of the people to the extinction of their sense of fair play, and the suppression of their sober second thought." McClain v. State, 182 Ala. 67, 77, 62 So. 241, 243.

■ The last two numbered assertions upon which it is thought a change of venue should have been predicated hardly merit comment. With two challenges to one the defendant was at no disadvantage because of the nineteen jurors from Moundville, even though it is not clear that these nineteen would not have accorded to defendant a fair and impartial trial.

■ And as for the disadvantage of not being represented by local attorneys because of the out-of-county counsels' unfamiliarity with the personnel of the venire and the consequent inability to intelligently select a jury, it is sufficient answer to observe that the attorneys could have enlisted the aid (and perhaps did so) of some one or several local attorneys or other responsible citizens to assist in the selection of a jury.

The above subject of the right to a change of venue addresses itself to the fundamentals governing the proper administration of our criminal law, hence the extended discussion. Godau v. State, supra, 179 Ala. at pages 37, 38, 60 So. at page 911.

The other propositions argued for error are clearly untenable and but slight discussion is due.

■ The minute entry showed a sufficient pronouncement under the law by the trial court of the sentence of death upon the defendant. While § 1, Title 7, Code 1940, declares that the minutes of the court must be read each morning in open court and on the adjournment of court must be signed by the judge, it is not necessary that each judgment entry be signed, and an entry reciting conviction of murder on the verdict of the jury and that the defendant being asked if he had anything to say why sentence should not be pronounced upon him said nothing, which further fixed the death penalty, is sufficient though the entry was not signed. Watts v. State, 204 Ala. 372, 86 So. 70.

■ The evidence disclosed that deceased was stabbed, shot with a shotgun, and clubbed in the head with a blunt instrument, either of which wound would have proved fatal. The eye-witness was present when the knife and gun were used and so testified. The club was found near the scene with bloodstains on it. The gun was found in the defendant's house with a freshly fired shell in it. Another shell was found at the scene, thus accounting for the two shots which killed the two men. Each of these articles were properly identified and correctly admitted in evidence. Haw-

kins v. State, 29 Ala.App. 221, 195 So. 762; certiorari denied, 239 Ala. 532, 195 So. 765; Lewis v. State, 220 Ala. 461, 125 So. 802; Johnson v. State, 215 Ala. 643, 112 So. 234; Anderson v. State, 209 Ala. 36, 95 So. 171.

The case was carefully tried upon legally admissible testimony and we are unable to discover any reversible error. Of consequence the judgment is affirmed.

Affirmed.

Execution date set for June 15, 1945.

All the Justices concur.